IN THE UNITES STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**DRA TAGGART, LLC**, a Pennsylvania
Limited Liability Company,

    Plaintiff,

v.   Civil Action No.: 1:16-1362

**MID-VOL COAL SALES, INC.**, a
West Virginia Corporation

    Defendant.

## COMPLAINT

Now Comes the Plaintiff, DRA Taggart LLC, by counsel, and files this Complaint for damages against Defendants Mid-Vol Coal Sales, Inc. on the grounds and in the amounts as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because it is an action between citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim occurred in the Southern District of West Virginia.

### THE PARTIES

3. Plaintiff DRA Taggart, LLC ("DRA Taggart") is a Pennsylvania Limited Liability Company with its principle place of business in Canonsburg, Pennsylvania. DRA Taggart specializes in design and construction services associated with materials handling and coal processing operations in the mining industry. It is the successor-in-interest to Forge Group North America, LLC and Taggart Global, LLC.

4. DRA Taggart Operations, LLC ("DRA Taggart Operations") is the successor-in-interest of Taggart Global Operations, LLC. Taggart Operations is a Pennsylvania Limited Liability Company with its principle place of business in Canonsburg, Pennsylvania. Taggart

1

Operations is an industry leader in the design, construction, and operation of coal preparation plant facilities.

5. Defendant Mid-Vol Coal Sales, Inc. ("Mid-Vol") is a West Virginia corporation with its principle place of business in Princeton, West Virginia. Mid-Vol is a subsidiary of global steel conglomerate ArcelorMittal, S.A. and its American holding company, ArcelorMittal USA LLC, and operates a coal mine, preparation plant, and load-out under the business name of ArcelorMittal Princeton.

## BACKGROUND

6. Mid-Vol hired DRA Taggart to perform certain construction services for Mid-Vol. Per an agreement between Mid-Vol and DRA Taggart, DRA Taggart billed Mid-Vol for its labor and materials costs plus fifteen percent (15%) for margin.

7. These services were provided on an "open book" basis with DRA Taggart employees meeting with Mid-Vol management regularly to review costs incurred and discuss necessary change orders and work directives.

8. Because of the ongoing nature of the relationship between DRA Taggart Operations and Mid-Vol, DRA Taggart would prepare proposals for requested projects, and Mid-Vol would in turn verbally accept the proposals and direct DRA Taggart to proceed with the requested work.

9. For example, just prior to the work on the clean coal press, DRA Taggart installed a refuse press plate for Mid-Vol using the cost plus fifteen percent terms. Mid-Vol paid the full amount for this project.

10. This customary business practice was continued with the installation of a clean coal press in 2014.

11. On February 24, 2014, Mid-Vol issued Purchase Order No. 7007933 that authorized DRA Taggart to conduct preliminary design work to prepare for the installation of the clean coal press.

2

12. Mid-Vol purchased the clean coal press equipment directly from the manufacturer.

13. Mid-Vol utilized DRA Taggart to perform the construction and installation work of the clean coal press equipment provided by Mid-Vol.

14. DRA Taggart performed all of its work and supplied all necessary materials at the direction of Mid-Vol management employees.  DRA Taggart did not perform any work that was not expressly requested and authorized by Mid-Vol management.

15. At Mid-Vol's direction and consistent with the prior invoicing practices between Mid-Vol and DRA Taggart, DRA Taggart continued to bill all of its labor and materials costs, plus fifteen percent margin, under P.O. 7007933.

16. At several points during the clean coal press project, Mid-Vol agents and/or employees Greg Jessee, Sam Crabtree, John Kennedy, and Zackary Kitts made multiple design and construction changes and approved the corresponding increased project cost.  Each of these changes were approved via a change orders or revisions to the original project proposal.  These approved change orders increased the total project cost to approximately Five Million dollars ($5,000,000.00).

17. At times during the same relevant time period, Mid-Vol management employees would request that DRA Taggart perform additional unrelated work on smaller projects for Mid-Vol. At the direction of Mid-Vol management, DRA Taggart billed Mid-Vol for this ancillary work under the same P.O. using the same previously agreed to cost plus fifteen percent payment model.

18.  DRA Taggart completed all of this work with the full knowledge and consent of Mid-Vol management employees.  At no point during construction did Mid-Vol management advise that any of the work was not authorized or beyond the scope of the original or revised proposals and subsequent change orders.

19. In fact, Mid-Vol continued to make regular payments for this work through May 29, 2015 and renegotiated some of the payment terms on outstanding invoices on or around October 15, 2014.

20. In total, Mid-Vol has only paid for approximately eighty-six percent (86%) of the total work provided by DRA Taggart.

21. As of Mid-Vol's last payment on May 29, 2015, Mid-Vol still owed DRA Taggart $987,207 on past due invoices. This amount constitutes both actual costs incurred, plus the additional fifteen percent (15%) margin.

### COUNT I – BREACH OF CONTRACT

22. DRA Taggart incorporates all of the allegations set forth in Paragraphs 1 through 21 of this Complaint and further states as follows:

23. DRA Taggart and Mid-Vol entered into a valid and enforceable contract wherein DRA Taggart would install certain components to a clean coal press system and perform other unrelated construction services for consideration in the amount of project costs plus fifteen (15%) percent.

24. Mid-Vol approved several change orders and revisions to the original proposal throughout this project that substantially increased the overall project costs.

25. DRA Taggart performed all of its work per the directives of Mid-Vol, and completed construction in May 2015.

26. Mid-Vol has materially breached its contractual obligations to fully pay for the work performed by DRA Taggart.

27. As a direct and proximate result of this breach, DRA Taggart has suffered damages in the amount of $987,207.00.

### COUNT II – *QUANTUM MERUIT/UNJUST ENRICHMENT*

28. DRA Taggart incorporates all of the allegations set forth in Paragraphs 1 through 27 of this Complaint and further states as follows:

29. DRA Taggart installed the clean coal press at the Plant at the request and direction of Mid-Vol.

30. DRA Taggart performed other construction work for Mid-Vol at the request and direction of Mid-Vol.

31. Mid-Vol benefited from DRA Taggart's work and retained the value of the clean coal press capital improvement at the Plant.

32. DRA Taggart reasonably expected to be reimbursed by Mid-Vol for its costs in completing the work and compensated for the reasonable value of its services.

33. It would be inequitable and unconscionable to permit Mid-Vol to retain the benefit of its clean coal press and other improvements without fully paying for the benefit. To allow otherwise would unjustly enrich Mid-Vol at the detriment of DRA Taggart, as well as the value of DRA Taggart's other construction services provided at the direction of Mid-Vol management.

34. Therefore, DRA Taggart is entitled to a claim of *quantum meruit* and/or unjust enrichment for both its cost and expected profit for its work for Mid-Vol.

WHEREFORE, DRA Taggart requests that this Court enter a judgment against Mid-Vol, in the amount of at least $987,207.00, plus costs, expenses, attorneys' fees, pre-judgment and post-judgment interest and such other further relief as this Court may deem just and proper.

DATED:   February 5, 2016

**DRA TAGGART, LLC**

**By Counsel:**

/s/Keith R. Hoover_____
Christopher A. Brumley (WV Bar # 7697)
Keith R. Hoover (WV Bar #11099)
FLAHERTY SENSABAUGH BONASSO PLLC
Post Office Box 3843
Charleston, West Virginia  25338-3843
Phone: (304) 345-0200
Fax: (304) 345-0260
cbrumley@flahertylegal.com
khoover@flahertylegal.com