IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

DRA TAGGART, LLC, a Pennsylvania
Limited Liability Company,

        Plaintiff,

v.                                                Civil Action No. 1:-16-1362

MID-VOL COAL SALES, INC., a
West Virginia Corporation,

        Defendant.

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to this Court's Scheduling Order of May 18, 2016, defendant Mid-Vol Coal Sales, Inc. ("Mid-Vol") provides the following *Proposed Findings of Fact and Conclusions of Law* on substantive theories of recovery or defense, and damages:

    *A.*    *Findings of Fact*

    1.    Mid-Vol owns and, through its affiliate Prime Processing, Inc., operates the Eckman Coal Preparation Plant ("Eckman Plant") in McDowell County, West Virginia. (Doc. 1; Complaint, ¶ 5)

    2.    Plaintiff DRA Taggart, LLC, formerly "Forge Group North America" ("DRA Taggart"), specializes in design and construction services associated with materials handling and coal processing operations in the mining industry. (*Id.* at ¶ 3)

    3.    DRA Taggart submitted a bid to procure and install a "refuse press" at the Eckman Plant, and Mid-Vol selected DRA Taggart to perform that work, based upon DRA Taggart's bid proposal. (Doc 36-1; Deposition of Greg Jessee, pp. 24 – 26)

1

4. On or around March 2014, after the installation of the refuse press was complete, Mid-Vol solicited bids for installation of a "clean coal press" at the Eckman Plant. (Doc. 36-2; DRA Taggart's Bid Documents)

5. DRA Taggart submitted a bid to install a clean coal press for the price of $4,535,838.59. (*Id.*)

6. DRA Taggart's bid on the clean coal press installation project included a markup for contingency, general and administrative expenses, and profit, equal to 15% of the cost of materials and labor for the project. (*Id.*)

7. Based upon plaintiff's "familiarity with the industry and cost factors," Mid-Vol awarded DRA Taggart the general contractor job for the clean coal press project. Thus, the parties agreed that DRA Taggart would procure and install a clean coal press at the Eckman Plant for the agreed on price of $4,535,838.59. (Doc. 36-3; Mid-Vol's Bid Approval Documents)

8. Mid-Vol issued job number J-4679 to the procurement and installation of the clean coal press job. (Doc. 36-7; DRA Taggart's Invoices and Final Project Price Summary)

9. As work on the clean coal press continued, DRA Taggart issued invoices to job number J-4679 for work contemplated by its original bid. However, in procuring and installing the clean coal press for Mid-Vol, DRA Taggart ultimately went over its bid price of $4,535,838.59, invoicing Mid-Vol an additional $404,401.34, for a total cost of $4,940,239.93 for work related to the clean coal press job. (*Id.*)

10. In its Complaint, DRA Taggart describes this price and scope overrun, and alleges that "[e]ach of these changes were approved via a [sic] change orders or revisions to the original project proposal. These approved change orders increased the total project cost to approximately Five Million dollars ($5,000,000.00)." (Doc. 1; Complaint, ¶ 16.)

4850-0486-7140.v1

11. In addition to the clean coal press job, DRA Taggart also performed "additional unrelated work on smaller projects." This additional work was not related to the clean coal press installation. As such, it was not contemplated by or described in DRA Taggart's original bid on the clean coal press job, or the resulting agreement with Mid-Vol.

12. DRA Taggart did not submit a bid to Mid-Vol for this additional unrelated work. As such, the parties did not reach an agreement regarding the precise scope and cost of the additional unrelated work before the work began.

13. Instead, DRA Taggart billed this unrelated work to the clean coal press job number, after the additional unrelated work had already been performed. By invoicing the additional unrelated work to the job number associated with the clean coal press, DRA Taggart essentially awarded itself the 15% profit associated with the terms of the unrelated clean coal press job. (*Id.*)

14. Regarding the additional unrelated work that DRA Taggart performed at the Eckman Plant, Mid-Vol has acknowledged that DRA Taggart performed the work at the request of Mid-Vol's former management, and that it retained the value of that work. (Doc 36; Defendant's Response to Plaintiff's Motion for Summary Judgment.)

15. Ultimately, with the overruns and additional unrelated work, DRA Taggart billed Mid-Vol $5,555,581.51 on the clean coal press project; $1,019,742.91 in excess of the original bid and agreed on price of $4,535,838.59. (Doc. 36-2, DRA Taggart's Bid Documents; Doc. 36-7, DRA Taggart's Invoices and Final Project Price Summary)

16. Mid-Vol has paid $4,568,373.5 on the clean coal press job. DRA Taggart initiated this lawsuit to recover $987,208.00, an amount that represents the difference between

3

the amount invoiced to the clean coal press job, and the amount that Mid-Vol has already paid. (Doc. 1; Complaint, ¶ 21.)

### B. Conclusions of Law

1. The Complaint contains two theories of recovery. Count One alleges a breach of an express contract. Count Two pleads in the alternative for recovery under a quantum meruit theory.

2. Under the breach of contract theory, DRA Taggart alleges the existence of an express, albeit unwritten contract between the parties whereby DRA Taggart performed various construction and installation work at the plant on an "ongoing," "open book" basis. According to DRA Taggart, under this alleged ongoing, open book arrangement, Mid-Vol requested that DRA Taggart perform various jobs for the defendant. Then, after completing each job, DRA Taggart would submit invoices for the completed job, adding 15% for its profit and other expenses. Under this alleged "open book" arrangement, the parties did not engage in a bid process, or other form of negotiation regarding the scope and price of a particular job, before DRA Taggart performed the work. (Doc 1; Complaint, ¶¶ 6-10).

3. According to the Complaint, this ongoing open book course of dealing began with DRA Taggart's procurement and installation of a refuse press, continued with the procurement and installation of a clean coal press, and was applied to "additional unrelated work on smaller projects" that DRA Taggart performed after the clean coal press project was complete. (Doc. 1; Complaint, ¶¶ 9-10, 17).

4. "A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as

4850-0486-7140.v1

establishing a common basis of understanding for interpreting their expressions and other conduct." W. Va. Code § 46-1-303.

5. The Court finds no evidence in the record to establish the existence of any "ongoing" "open book" agreement described in the Complaint. Contrary to the allegations, the evidence adduced demonstrates a course of dealing and sequence of conduct whereby the parties engaged in a bid process before entering into mutually binding and enforceable contracts for the performance of construction jobs. Further, documentary evidence related to the clean coal press contract shows the parties' intent to clearly define the scope and price of such jobs prior to commencement of the work or consummation of any enforceable agreement.

6. Accordingly, the Court holds that the parties entered into an enforceable contract whereby they agreed that DRA Taggart would procure and install a clean coal press at the Eckman Plant for the agreed on price of $4,535,838.59. Recovery for any charges related to the procurement or installation of the clean coal press at Eckman Plant is controlled by the terms of that contract, including its price term.

7. Further, "[t]he burden of proving an oral modification of a written contract is on the party seeking to establish such modification, and such party must demonstrate by clear and positive evidence that the minds of the parties definitely met on the alteration." Syl. pt. 4, *Bischoff v. Francesa*, 133 W.Va. 474, 56 S.E.2d 865 (1949)." Syl. pt. 5, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986). Thus, to recover for any cost overrun on the original scope and price of the clean coal press job, plaintiff must prove "by clear and positive evidence" that a meeting of the minds occurred as to all required elements of a modified contract. *Id.*

4850-0486-7140.v1

8. "An express contract is one the terms of which are declared by the parties, either orally or in writing, at the time it is made...." 17 *Corpus Juris Secundum*, Contracts § 5.

9. "It is elementary that mutuality of assent is an essential element of all contracts. In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evinces the intention of the parties to contract." *Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140–41, 437 S.E.2d 448, 450–51 (1993)(citations omitted).

10. "That consideration is an essential element of, and is necessary to the enforceability or validity of a contract is so well established that citation of authority therefor is unnecessary. Consideration has been defined as 'some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.'" *First Nat. Bank of Gallipolis v. Marietta Mfg. Co.*, 151 W. Va. 636, 642, 153 S.E.2d 172, 177 (1967)(quoting 17 Am.Jur.2d, Contracts, Section 85).

11. Regarding the additional unrelated work on smaller projects that DRA Taggart invoiced to the clean coal press job, the Court finds no evidence in the record to show that the parties reached a meeting of the minds regarding the scope and price of this additional work before DRA Taggart performed the work and invoiced Mid-Vol. Finding no sufficient evidence in the record to support the required element of mutuality of assent as to consideration for the additional work, the Court finds no evidence of a valid and enforceable contract governing that additional work.

12. Regarding the additional unrelated work on smaller projects, the Court finds that (1) no "ongoing" "open book" agreement existed between the parties; (2) the additional unrelated work on smaller projects was not contemplated or described in the parties'

6

agreement to install a clean coal press; and (3) there is no allegation or evidence of any other valid enforceable contract between the parties that governs the additional unrelated work that plaintiff performed at the Eckman Plant. Thus, the Court holds that no valid enforceable contract exists that governs plaintiff's claims for recovery related to the additional unrelated work.

13. "The distinction between an express and implied contract is that when there is an actual promise, a contract is said to be express; when there is no actual promise, a contract is said to be implied. The distinction involves no difference in legal effect, but lies merely in the mode of manifesting assent, or rests in the mode of proof." *Case v. Shepherd*, 140 W. Va. 305, 310, 84 S.E.2d 140, 143 (1954).

14. "The principle underlying quantum meruit recovery 'is a contract implied in law ... based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another.' 'If benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving and retaining the benefits to pay their reasonable value.'" n. 17. *Copley v. Mingo Cty. Bd. of Educ.*, 195 W. Va. 480, 486, 466 S.E.2d 139, 145 (1995)(citations omitted).

15. "It is axiomatic that in a suit on quantum meruit for services the value of the services must be shown and not left to conjecture." *Statler v. Dodson*, 195 W. Va. 646, 654, 466 S.E.2d 497, 505 (1995) (quoting *Stafford v. Bishop*, 98 W.Va. 625, 127 S.E. 501 (1925)).

16. Based on the foregoing authority, the Court holds that, to recover for any amount claimed against the defendant, the plaintiff has the burden to prove by competent evidence the reasonable value of any goods or services it alleges was retained by the defendant without payment.

                                  **MID-VOL COAL SALES, INC.**
                                  *By Counsel*

/s/ Evan R. Kime
ERIN ELIZABETH MAGEE (WVSB # 6078)
EVAN R. KIME (WVSB #10323)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
Charleston, West Virginia 25302
(304) 340-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

DRA TAGGART, LLC, a Pennsylvania
Limited Liability Company,

    Plaintiff,

v.                                             Civil Action No. 1:-16-1362

MID-VOL COAL SALES, INC., a
West Virginia Corporation,

    Defendant.

## CERTIFICATE OF SERVICE

I, Evan R. Kime, counsel for Mid-Vol Coal Sales, Inc., hereby certify that on this 16th day of March, 2017, the foregoing ***Defendant's Proposed Findings of Fact and Conclusions of Law*** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> Christopher A. Brumley (WVSB #7697)
> Keith R. Hoover (WVSB #11099)
> Flaherty Sensabaugh Bonasso PLLC
> P.O. Box 3843
> Charleston, WV 25338
> cbrumley@flahertylegal.com
> khoover@flahertylegal.com

> /s/ Evan R. Kime
> EVAN R. KIME (WVSB #10323)

9

4850-0486-7140.v1